UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
PARMANAND BUDHOO,

                Petitioner,　　　　REPORT & RECOMMENDATION

      -against-　　　　　　11 Civ. 1331 (AJN)(MHD)

SUPERINTENDENT, GREEN HAVEN
CORRECTIONAL FACILITY,

         Respondent.　 :
--------------------------------x

TO THE HONORABLE ALISON J. NATHAN, U.S.D.J.:

     Petitioner Parmanand Budhoo seeks a writ of habeas corpus to
challenge his 2005 conviction in New York State Supreme Court,
Bronx County, on single counts of Attempted Murder in the Second
Degree, Assault in the First Degree, Burglary in the First Degree,
Aggravated Criminal Contempt, Criminal Possession of a Weapon in
the Fourth Degree and Criminal Contempt in the First Degree, as
well as two counts of Criminal Contempt in the Second Degree. All
of these charges stemmed from petitioner's hostile interactions
with his estranged wife during the first part of 2004. Budhoo is
currently serving a collective set of prison sentences of twenty
years on these convictions.

     In petitioner's current application, he asserts a variety of
grounds for relief. Thus he challenges (1) the trial court's

1

admission of evidence of a prior, uncharged bad act by him, (2) the admission of his post-arrest exculpatory statement, (3) the testimony of a police officer to the effect that he had understood that there was no doubt as to Budhoo's responsibility for stabbing his wife, (4) the failure of his trial attorney to provide adequate representation, and (5) the failure of his appellate attorney to invoke Budhoo's right to effective assistance of trial counsel. Respondent opposes, arguing that petitioner's claims are either not cognizable under federal law, procedurally barred or meritless.

For the reasons that follow, we recommend that the writ be denied and the petition dismissed with prejudice.

I. Prior Proceedings

Most of the charges against Budhoo are attributable to an incident occurring on June 1, 2004, when he repeatedly stabbed his wife, Rookmin Budhoo. The remaining charges were based on several prior instances in which he had violated orders of protection limiting his contact with his wife and children. On June 14, 2004, a Bronx County grand jury indicted Budhoo on a single count of first-degree attempted murder, two counts of first-degree assault, three counts of second-degree assault, a single count of first-

2

degree burglary, three counts of second-degree burglary, single counts of aggravated criminal contempt and fourth-degree criminal possession of a weapon, two counts of first-degree criminal contempt, four counts of second-degree criminal contempt, and a single count of second-degree aggravated harassment. (Reimels Decl. Ex. 2 at 3).

Trial commenced on March 21, 2005 before the Hon. George Villegas and a jury. The prosecutor presented the testimony of Rookmin Budhoo and two of her children -- Salochna and Rohani Budhoo -- as well as that of a number of police personnel and the doctor who treated Mrs. Budhoo. Petitioner testified in his own defense and also called his work supervisor as a witness.

A. The State's Case

Mrs. Budhoo and the two testifying children reported that the family -- which included a third, younger child, Mahendra (also referred to as Kevin) -- had immigrated to the United States from Guyana in 1998 and settled at 1447 Leland Avenue in the Bronx in 2003. (Tr. 655-57, 347, 427). According to these three witnesses, however, by the next year the relationship between petitioner and his wife had fallen apart, as exemplified by a series of incidents

3

leading up to Rookmin Budhoo's stabbing.

On February 9, 2004, Rookmin complained to petitioner that she was required to work while he remained home, drinking and not looking to obtain a job. During the argument, petitioner went to the kitchen and seized a knife. When his wife saw the weapon and ran to her bedroom and locked the door, petitioner stabbed himself in the stomach. His daughter Salochna then called the police, and petitioner subsequently moved out of the family apartment. (Tr. 658-61, 721, 725, 734, 349-52, 389, 407, 410, 430-32, 434, 476-77). Mrs. Budhoo and the children remained in the apartment, and occasionally on weekends petitioner's friend, Vernon Barabum, slept over on a couch in the living room. ((Tr. 666, 735, 414-15, 417).

On February 29, 2004, petitioner telephoned his wife several times, while the children and her mother were present in the apartment. According to Mrs. Budhoo, the petitioner demanded that he be allowed to return, warning "if you don't take me back, I'm going to kill you and kill myself, and if your mom knows what is good for herself, [tell her] to leave the house." (Tr. 662). In the wake of this incident, both Mrs. Budhoo and her daughter Rohani received an order of protection. (Tr. 662-64, Tr. 353-55).

4

On the evening of May 20, 2004, Mrs. Budhoo and the children were home. Throughout that evening, until midnight, petitioner called an estimated twenty to thirty times, demanding once again that he be allowed to return. Once more he told his wife "if you don't take me back, I am going to kill you and kill myself." He also spoke with his daughter Rohani and told her to "force your mom to take me back or I'm going to kill her and kill myself." This episode led to the issuance of another order of protection against petitioner. (Tr. 667-71, 355-57, 435-36, 467, 472).

On May 27, 2004, Mrs. Budhoo and her daughter Rohani were walking to a store when they were accosted by petitioner, who demanded that his wife allow him to return and threatened otherwise to kill her and himself. Against his wife's wishes, he followed them for a distance, but then left. (Tr. 672-75, 364-65).

On the morning of June 1, 2004, Mrs. Budhoo walked her son to school. Mr. Barabum, who had slept over the prior night, took Rohani to her school. (Tr. 679-81, 718, 368-70, 412-13, 439-41). While en route to Mahendra's school, Mrs. Budhoo saw that petitioner was following her. He approached and kissed Mahendra and then accompanied them to the school. Mrs. Budhoo had planned to go to a supermarket and purchase groceries before going to a job

5

interview. Petitioner accompanied her, against her desire, and at the supermarket he put groceries in a shopping cart and paid for them, a step in which Mrs. Budhoo acquiesced because she was not working and was short of funds. He also insisted on accompanying her back to her building, promising that he would leave the groceries in front and not come to the apartment. (Tr. 682-86, 729-30). When they arrived at the building, however, he went straight to the apartment despite his wife's effort -- including getting her daughter Salochna to meet them downstairs -- to prevent him from doing so.   (Tr. 686-89, 730, 442-44).

Petitioner dropped the groceries in the kitchen and began to wander around the apartment. At some point he approached his wife and demanded to know when she would take him back, to which she responded that she would not do so: "I don't want you back. I am not going to let you come back home." At that point he took a long knife from his backpack and approached Mrs. Budhoo, throwing her to the ground, straddling her and then repeatedly stabbing her as she screamed for him to stop. (Tr. 690-95, 697, 706, 708, 447, 449-50, 452).

In an effort to protect Mrs. Budhoo, her daughter Salochna approached her father, but he raised his knife and pointed it at

6

her. She then ran out of the apartment, and went to a neighbor's apartment from where she called the police and then her sister Rohani. (Tr. 696, 451, 453-55, 459, 371-72).

When Salochna left the apartment, petitioner got off his wife and told her that she was going to die there. He then began to stab himself, as his wife got up and ran out of the apartment and to the street. Her husband chased her downstairs and, outside the building, grabbed her arm, attempting to drag her back to the apartment. He then fell on top of her, saying "come let's go die inside the apartment." (Tr. 699-701).

The police arrived at that point, in response to a radio call that a woman had been stabbed. They saw petitioner lying on his wife and observed that she had injuries to her leg and was bleeding heavily from her chest. When questioned as to who had attacked her, she identified her husband. The police arrested Mr. Budhoo, who had a visible laceration across his stomach. (Tr. 512-16, 542-43, 548, 558, 482-84, 490-91, 702-03). One of the officers followed a trail of blood from the sidewalk into the Budhoo apartment. He observed a set of grocery bags in the kitchen and found a knife with an eight-inch blade. (Tr. 486-91, 521-22).

7

Mrs. Budhoo was transported to Jacobi Hospital, where she was found to have stab wounds on her right upper chest, her left chest, her right arm above her elbow, her left knee and her stomach. (Tr. 633-41, 703). Because of internal bleeding, she underwent emergency surgery to drain blood from her chest resulting from a perforated artery. (Tr. 631-32). She later underwent another operation to repair damage to a nerve in her right arm, which had prevented her from moving her fingers and arm. The surgery permitted her to have some limited use of her arm. (Tr. 632-43, 704-05, 710, 733).

B. The Defense Case

Petitioner testified on his own behalf. He reported that his wife commonly asked for money after their separation and that he would meet her to give her funds. She also asked him on one occasion to take their son to the dentist. (Tr. 783-84, 786-89, 802-05, 812, 815, 817, 823, 825). As for the June 1, 2004 confrontation, he recounted that his wife had called him the day before, asking him for money to buy food. He asserted that he had therefore accompanied her to a supermarket and told her to choose as much as she wanted. He then carried all the bags to his wife's building, where he was greeted by their daughter Salochna. He entered the apartment and deposited the groceries in the kitchen.

8

(Tr. 790-92, 824-25).  In his account, his wife then started to argue with him, demanding more money to pay the rent, and he refused, accusing her of having an affair with Mr. Barabum. (Id. at 793). When he called her "a fucking whore," he said, she grabbed a knife from a drawer, causing him to retreat to the living room, where he fell over a table. At that point, he narrated, she leaped on him and stabbed him repeatedly in the stomach. (Tr. 793, 795-97, 825-29). He reported that he then seized the knife and began to defend himself, at which point his wife ran out of the apartment. He followed her outside and, according to him, Mrs. Budhoo then said to him "come honey come... We [are] not going to die. We are going to the hospital. Come next to me." He then placed himself on top of her and hugged her until the police arrived. (Tr. 798, 829-31).

As a second witness, petitioner called Parmanand Deonarine, who was his work supervisor. (Tr. 751-52). Mr. Deonarine testified that petitioner was a good employee and that the two of them were friends. (Tr. 752-53, 755-57).

C. The State's Rebuttal Case

Finally the State called a police officer and an Emergency

9

Medical Services ("EMS") technician, both of whom had accompanied petitioner to the hospital. (Tr. 849-51, 878-80). They both reported that on the ride he had blamed his injuries and those of his wife on the boyfriend of his daughter, who supposedly had been in the apartment, naked, when he arrived there with the groceries. According to Budhoo, the boyfriend stabbed both him and Mrs. Budhoo, then dressed himself and chased both of them out of the apartment. (Tr. 851-52, 856, 858, 879-80, 882-83).

D. Verdict and Sentence

The jury returned its verdicts on April 4, 2005. It found Budhoo guilty of single counts of second-degree attempted murder, first-degree assault, first-degree burglary, aggravated criminal contempt, fourth-degree weapon possession, and first-degree criminal contempt, and two counts of second-degree criminal contempt. It acquitted him of one count of first-degree criminal contempt and one count of second-degree aggravated harassment. (Tr. 1064-69).

On May 3, 2005, the court sentenced Budhoo to concurrent determinate sentences of twenty years, fifteen years, fifteen years, one year, one year, one year and one year, to be followed by

10

five years of post-release supervision. (Reimels Decl. Ex. 2 at 1).


   E. Petitioner's Appeal


   On appeal to the Appellate Division, First Department, Budhoo
pressed five separate grounds for relief from his conviction and
sentence. First, he complained that the introduction of testimony
about his February 9, 2004 run-in with his wife -- which involved
only uncharged conduct -- had denied him a fair trial. (Reimels
Decl. Ex. 1 at 22-29). Second, he asserted that his statements to
the police officer and the EMS technician, as recounted on the
State's rebuttal case, should have been precluded because the
prosecutor had not given defense counsel prior notice that the
State would use those statements, as purportedly required by N.Y.
710.30(1) & (2). (Id. at Ex. 1 pp. 30-34). Third, he argued that
the prosecutor had engaged in misconduct by eliciting from a
testifying police officer that, while gathering evidence at the
crime scene, the officer had learned that there was no question
that Budhoo had stabbed his wife. (Id. at 34-35).[1] Fourth, he
asserted that the collective impact of the asserted errors at trial

_____

   [1] This testimony was offered to explain the officer's
decision not to take any fingerprint impressions. See pp. 33-34,
infra.

11

had denied him a "fundamentally fair trial." (Id. at 35-37).
Finally, he complained that his sentence was "unduly harsh and
excessive." (Id. at 37-38).   On December 20, 2007, the Appellate
Division affirmed. In doing so, it explicitly addressed the
introduction of the evidence about the February 9, 2004 knife-
wielding incident, holding that the trial court had properly
exercised its discretion, since the evidence was "relevant to
defendant's motive and future intent, while also providing the jury
with background information explaining the origin of the instant
charges and the relationship between defendant and the victim." It
further observed that "the probative value of this evidence
outweighed any prejudicial effect." People v. Budhoo, 46 A.D.3d
406, 406, 847 N.Y.S.2d 581, 582 (1st Dep't 2007). The panel also
declined to reduce the sentence imposed on Budhoo. As for his
remaining claims, the court held that they were unpreserved, and it
refused to address them in the interest of justice. Finally, in the
alternative, it noted that even if it had determined to review
those claims, it would have found them meritless. Id. Petitioner
moved for reargument, but the court denied that motion. (Reimels
Decl. ¶ 9 & Ex. 5).


     Petitioner next sought leave to appeal to the New York Court
of Appeals. On April 2, 2008, that court denied his application.

People v. Budhoo, 10 N.Y.3d 838, 859 N.Y.S.2d 397 (2008).

F. Petitioner's Post-Appeal Applications

On June 19, 2009, petitioner filed a motion in the Appellate
Division seeking a writ of error coram nobis, based on the
contention that his appellate attorney had denied him effective
representation by failing to assert a claim that he had been denied
effective trial representation. According to Budhoo, that omitted
Sixth Amendment claim should have included complaints that trial
counsel had erred (1) by not seeking to bar the use of his post-
arrest statement because of (a) the prosecutor's failure to give
the statutory notice under section 710.30(1) & (2) and (b) the
involuntariness of the statement, and (2) by not objecting to the
testimony of the police officer that he had understood that Budhoo
was the stabber. (Id. ¶ 11 & Ex. 8). By form order dated October
27, 2009, the appellate court denied Budhoo's coram nobis motion.
(Id. ¶ 12 & Ex. 10). Petitioner sought leave to appeal that denial,
but the Court of Appeals denied his leave application on December
30, 2009. (Id. ¶ 13 & Ex. 11 (People v. Budhoo, 13 N.Y.3d 905, 895
N.Y.S.2d 320 (2009))).

The next day petitioner filed a motion in the trial court to

13

vacate his conviction and sentence pursuant to N.Y. Crim. Proc. L.
§§ 440.10 & 440.20. (Id. ¶ 13 & Ex. 12). On this application Budhoo
invoked the Sixth Amendment and resumed his assault on his trial
attorney's performance, launching no fewer than six complaints
about his former counsel. These included the assertions that

    1. the attorney had failed to call as a witness Budhoo's
brother, who could have testified that long before the June
1, 2004 incident Mrs. Budhoo had physically and verbally
abused her husband;

    2. the attorney had failed to call as a witness
petitioner's son Mahendra to testify about an earlier
incident in which Mrs. Budhoo had threatened petitioner
with a knife;

    3. the attorney had failed to elicit from petitioner an
account of an earlier incident in which Mrs. Budhoo and Mr.
Barabum had attacked him outside his work site, seizing his
cell phone and beating him about the head with it;

    4. the attorney had failed to proffer evidence at trial or
sentencing concerning an incident from many years before in
Guyana in which Budhoo had suffered a traumatic brain
injury that supposedly led to a change in his behavior;

    5. the lawyer had supposedly prevented petitioner from
testifying;[2] and

    6. the attorney had not conducted an adequate pre-trial
investigation and had failed to communicate sufficiently
with his client.

_____

    [2] In view of the fact that Budhoo indeed testified in his own
defense, it may be surmised that petitioner's apparently newly-
hired counsel had not actually acquainted himself with the
pertinent facts of the case when he filed this motion, a fact
that he himself appeared to admit. (See id. Ex. 12 (Edelstein
Aff.) ¶ 4).

(Id. Exs. 12 & 14). The State opposed the motion, and included in
its papers an affirmation by Budhoo's trial attorney, Evans D.
Prieston, Esq., which addressed a number of his former client's
complaints. (Id. at Ex. 13).[3]

On December 3, 2010, the trial court denied Budhoo's 440.10
motion, rejecting his ineffective-assistance claim on the merits.
In doing so, Justice Villegas addressed each complaint separately
and relied on the declaration testimony of the former trial
attorney. With regard to the failure to call petitioner's brother,
Mr. Hodeo, as a witness, the judge noted that trial counsel
reported that he had interviewed Mr. Hodeo and concluded that he
was not a proper witness because he was willing to lie in order to
help his brother. (Id. at 2-3).[4] As for the failure to call Mr.
Budhoo's young son, the judge noted that the child had not been

_____

[3] Respondent's initial habeas papers did not include a copy
of that affirmation, which Justice Villegas addressed with some
specificity in his decision. (See id. Ex. 15 at 1-4). However,
respondent later produced a copy of the Prieston affirmation, in
accordance with our June 28, 2013 order.

[4] We note also that it appears from the declaration of Mr.
Hodeo proffered by Budhoo in support of his section 440.10
motion, that he was not a witness to the various family
encounters to which he refers (see Reimels Decl. Ex. 12 -- Hodeo
Aff. ¶¶ 3-12), and hence his testimony would have been
inadmissible hearsay. See pp. 40-41, infra.

15

present to witness the June 1 assault, and the lawyer's decision not to call him was a strategic decision and was not subject to second-guessing on an ineffective-assistance claim. (Id. at 3).

As for the purported assault by Mrs. Budhoo and Mr. Barabum on petitioner, the court noted that the best witness for that fact was Budhoo himself, who testified and never mentioned the incident. The court went on to find that there was no factual basis for Budhoo's complaint about this incident. (Id. at 3).

Insofar as Budhoo complained about the attorney's failure to mention his client's asserted traumatic brain injury, the judge noted that trial counsel had denied ever hearing about such an incident. Crediting this representation, the court observed that counsel could not be taxed with not mentioning an event about which he had never learned. (Id. at 4). The judge further stated that even if he had been informed of this purported incident, his sentencing decision -- which imposed a sentence five years less than the statutory maximum -- would not have been altered. (Id. at 3-4).

The court next rejected out of hand petitioner's contention that his attorney had prevented him from testifying, noting that

16

Budhoo had indeed testified. Finally, the judge rejected Budhoo's assertion that his attorney had not communicated with him. In so ruling, the court relied not only on counsel's representation in his declaration that he had communicated with Budhoo, his brother and other family members, but also on his own observation at trial of counsel communicating with petitioner. (Id. at 4).

Based on these observations, Justice Villegas concluded that petitioner had failed to demonstrate that his trial lawyer's performance had fallen short of professional standards under either New York or federal law, and that in any event he had also failed to show that he had been prejudiced by any purported shortfall in the attorney's performance. He accordingly denied the motion. (Id. at 4-5).

Petitioner sought leave to appeal to the Appellate Division from the denial of his section 440.10 motion. That court denied his application by order dated February 22, 2011. (Id. ¶ 16).

Having been rebuffed by the state courts, Budhoo filed his habeas petition in this court on February 25, 2012.

17

ANALYSIS

We address Budhoo's claims in the order in which he presents them. We start by summarizing the applicable habeas standards.

I. Standard of Review

The stringency of federal habeas review turns on whether the state courts have passed on the merits of a petitioner's claim, that is, whether the decision of the highest state court to consider the claim is "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (discussing 28 U.S.C. § 2254(d)). If the state court has addressed the merits, the petitioner may obtain relief only if the state court's ruling

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See, e.g., Bell v. Cone, 535 U.S. 685, 693-94 (2002); Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring); Besser v. Walsh, 601 F.3d 163, 178 (2d Cir. 2010), vacated on other grounds sub nom. Portalatin v. Graham, 624 F.3d 69

18

(2d Cir. 2010) (en banc); Howard v. Walker, 406 F.3d 114, 121-22
(2d Cir. 2005); Brown v. Artuz, 283 F.3d 492, 498 (2d Cir. 2002).

Clearly established federal law "'refers to the holdings, as
opposed to the dicta, of the Supreme Court's decisions as of the
time of the relevant state-court decision.'" Howard, 406 F.3d at
122 (quoting Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002)).
"[A] decision is 'contrary to' clearly established federal law 'if
the state court arrives at a conclusion opposite to that reached by
[the Supreme] Court on a question of law or if the state court
decided a case differently than [the Supreme] Court has on a set of
materially indistinguishable facts.'" Id. (quoting Williams, 529
U.S. at 413). See also Marshall v. Rodgers, 133 S.Ct 1446, 1448
(2013).

What constitutes an "unreasonable application" of settled law
is a somewhat murkier proposition. "'A federal court may not grant
habeas simply because, in its independent judgment, the "relevant
state-court decision applied clearly established federal law
erroneously or incorrectly."'" Id. (quoting Fuller v. Gorczyk, 273
F.3d 212, 219 (2d Cir. 2001) (quoting Williams, 529 U.S. at 411)).
The Supreme Court observed in Williams that "unreasonable" did not
mean "incorrect" or "erroneous," noting that the writ could issue

19

under the "unreasonable application" provision only "if the state court identifies the correct governing legal principle from this Court's decisions [and] unreasonably applies that principle to the facts of the prisoner's case." 529 U.S. at 410-13. As implied by this language, "'[s]ome increment of incorrectness beyond error is required... [H]owever... the increment need not be great; otherwise habeas relief would be limited to state court decisions "so far off the mark as to suggest judicial incompetence."'" Monroe v. Kuhlman, 433 F.3d 236, 246 (2d Cir. 2006) (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)); accord Richard S. v. Carpinello, 589 F.3d 75, 80 (2d Cir. 2009).

Under the Supreme Court's more recent, and arguably more stringent, interpretation of the statutory language, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "Under § 2254(d), a habeas court must determine what arguments or theories supported or... could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the

20

Supreme] Court." Id. Under this more recent interpretation, a
federal habeas court has "authority to issue the writ in cases
where there is no possibility fairminded jurists could disagree
that the state court's decision conflicts with [the Supreme]
Court's precedents." Id. In other words, to demonstrate an
'unreasonable' application of Supreme Court law, the habeas
petitioner "must show that the state court's ruling on the claim
being presented in federal court was so lacking in justification
that there was an error well understood and comprehended in
existing law beyond any possibility for fairminded disagreement."
Id. at 786-87.

As for the state courts' factual findings, under the habeas
statute "a determination of a factual issue made by a State court
shall be presumed to be correct. The applicant shall have the
burden of rebutting the presumption of correctness by clear and
convincing evidence." 28 U.S.C. § 2254(e)(1); Richard S., 589 F.3d
at 80-81; McKinney v. Artuz, 326 F.3d 87, 101 (2d Cir. 2003); see
also Rice v. Collins, 546 U.S. 333, 338-39 (2006).

II. Assessment of Budhoo's Claims

A. Admission of Evidence of the February 9, 2004 Incident

Budhoo first complains about the admission of testimony by his wife and daughter about the events of February 9, 2004, in which he wielded a knife in their presence, leading his wife to hide in her locked bedroom. That incident triggered petitioner's ejection from the apartment and his separation from his wife and also formed a significant part of the context for the later issuance of orders of protection.

Budhoo's theory is that evidence of this uncharged conduct by him denied him a fair trial, in purported violation of his right to due process. The argument is baseless.

State-court decisions concerning the admission of evidence generally do not pose issues of constitutional dimension, and, as such, are not ordinarily subject to federal habeas review. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-70, 75 (1992); Washington v. Schriver, 255 F.3d 45, 56 (2d Cir. 2001) (quoting Agard v. Portuondo, 117 F.3d 696, 705 (2d Cir. 1997), rev'd on other grounds, 529 U.S. 61 (2000)); Stenson v. Heath, 2012 WL 48180, *11-

22

*12 (S.D.N.Y. Jan. 10, 2012). A ruling that permits the introduction of evidence against a criminal defendant may violate the defendant's due-process rights if the decision is erroneous and the evidence is "so extremely unfair that its admission violates fundamental conceptions of justice." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)). To demonstrate such a due-process violation, the petitioner must show that the evidence admitted was both unfairly prejudicial and "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Id. (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992)). Budhoo does not meet this standard.

The Supreme Court made clear in Spencer v. Texas, 385 U.S. 554 (1967), that it has no constitutional authority to define state-court rules of evidence, id. at 563-64, and that state rules allowing proof of prior crimes for some rational purpose are not constitutionally suspect. Id. at 560-62. Moreover, although the admission of such evidence solely to establish predisposition is precluded both by Fed. R. Evid. 404(b) and by state law, see, e.g., United States v. Greer, 631 F.3d 608, 614 (2d Cir. 2011)(quoting Fed. R. Evid. 404(b)); People v. Rojas, 97 N.Y.2d 32, 36-37, 735 N.Y.S.2d 470, 472-73 (2001) (citing People v. Molineux, 168 N.Y.

23

264, 300 (1901)), under both the Federal Rules and New York law such evidence may be used for any other pertinent purpose. See, e.g., Greer, 631 F.3d at 614; United States v. Diaz, 176 F.3d 52, 79 (2d Cir. 1999); United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994); United States v. DeVillio, 983 F.2d 1185, 1194 (2d Cir. 1993); United States v. Brennan, 798 F.2d 581, 589 (2d Cir. 1986); People v. Resek, 3 N.Y.3d 385, 390, 787 N.Y.S. 2d 686, 687 (2004) (citing People v. Green, 35 N.Y.2d 437, 441, 363 N.Y.S.2d 910, 913 (1974)). Evidence that is probative of matters other than simply predisposition to commit a crime should be suppressed by the trial court only "where its probative value is substantially outweighed by the danger that it will unfairly prejudice the other side or mislead the jury." People v. Scarola, 71 N.Y.2d 769, 777, 530 N.Y.S.2d 83, 86 (1988); see also People v. Massey, 49 A.D.3d 462, 856 N.Y.S.2d 44, 46 (2d Dep't 2008); People v. Castaneda, 173 A.D.2d 349, 350, 569 N.Y.S.2d 719, 720 (1st Dep't 1991); Inserra, 34 F.3d at 89 (citing Fed. R. Evid. 403)).

In this case the events of February 9, 2004 were significantly relevant to the charges against Budhoo and the evidence underlying those charges, since they (a) served to demonstrate the existence of family discord leading up to the incidents that formed the basis for the charges, (b) explained why Budhoo was not living with the

24

family, (c) illustrated a portion of the basis for the issuance of the orders of protection that formed the predicate for the criminal-contempt charges, and (d) offered a needed context for understanding why the various actors in this family drama acted and reacted in the ways that they did during the period when the charged criminal conduct took place. Moreover, to the extent that Budhoo was claiming at trial that he had acted only in self-defense on June 1, 2004, his conduct on earlier occasions -- including February 9, 2004 -- gave the jurors an insight into whether his actions on the later date were motivated by the intent that he claimed or were in fact infused with an intent to cause death or injury, as charged by the State. Moreover, as the Appellate Division found, the probative value of the challenged testimony plainly outweighed any unfair prejudice. See Budhoo, 46 A.D.3d at 406, 847 N.Y.S.2d at 582.

In sum, the evidence was permissibly admitted under state law, and its admission was consistent with constitutional principles. See generally Greer, 631 F.3d at 614 (evidence of prior act needed "to complete the story of the crime on trial" and to demonstrate motivation for defendant's conduct)(quoting inter alia United States v. Kaiser, 609 F.3d 556, 570 (2d Cir. 2010)). Moreover, the ruling of the Appellate Division upholding the trial judge's

25

admission of this evidence plainly is not contrary to, or an unreasonable application of, settled Supreme Court precedent. Indeed, the High Court has never held that the use of prior crimes to show propensity would violate due process, see, e.g., Patterson v. Rock, 2012 WL 2853635, *9 (S.D.N.Y. July 3, 2012) (citing McGuire, 502 U.S. at 75 n.5), much less held that use of such evidence for other purposes was constitutionally suspect. Hence petitioner could not obtain habeas relief even if we were otherwise inclined to view the trial-court evidentiary ruling as inconsistent with due-process standards.


B. The Statutory-Notice Claim


Petitioner next complains about the testimony received from a police officer and an EMS technician describing a statement that Budhoo made while being transported to hospital. The statements involved his apparently false claim that the injuries that he and his wife had suffered had been inflicted by his daughter's boyfriend, whom Budhoo had supposedly discovered naked at the apartment. The basis for petitioner's complaint is that the State did not provide prior written notice of its intention to use that statement, assertedly a New York statutory requirement.

Respondent opposes, contending that (1) the claim is procedurally barred, (2) that it is not cognizable on a habeas petition, since it rests solely on state law, and (3) that it is meritless. The second point is sufficient to dispose of the claim.

The habeas statute permits a state prisoner to seek relief on the basis that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). It follows that the habeas court may not grant relief for asserted violations of state law. See, e.g., Waddington v. Sarausid, 555 U.S. 179, 192 n.5 (2009); McGuire, 502 U.S. at 67-68; Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002). Petitioner's claim is based solely on the purported applicability of section 710.30(1)(a) of the New York Criminal Procedure Law,[5] and hence is not

---

[5] The cited provision states in relevant part:

    1. Whenever the people intend to offer at a trial (a) evidence of a statement made by a defendant to a public servant which statement if involuntarily made would render the evidence thereof suppressible upon motion pursuant to subdivision three of section 710.20, . . . they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.

The provision goes on to require that the notice must be served within fifteen days after arraignment and before trial, and that the defendant must be given sufficient time to move to suppress. N.Y. Crim. Proc. L. § 710.30(2). A failure to meet these procedural requirements mandates suppression. Id. § 710.30(3).

27

cognizable on habeas review. See, e.g., Ventura v. Artuz, 2000 WL 995497, *12 (S.D.N.Y. July 19, 2000); Little v. Greiner, 1999 WL 1390249, *1 (W.D.N.Y. Aug. 27, 1999) (citing cases).[6]

C. Prosecutorial Misconduct

Budhoo next asserts that he was denied a fair trial by virtue of the prosecutor deliberately eliciting impermissible testimony by a police officer to the effect that the officer, who was collecting crime-scene evidence, had not obtained fingerprint evidence because he had understood that there was no question about Budhoo's responsibility for the stabbing of Mrs. Budhoo. Respondent argues in response that the claim is procedurally barred and meritless. We agree with both points but focus on the procedural-bar question.

---

[6] We note in passing that the testimony that petitioner challenges here might not even be barred under subsection 3 of section 710.30(a) because the petitioner's own testimony can be viewed as opening the door to the rebuttal testimony in question; specifically, Budhoo testified at trial that his wife had attacked him and that he had defended himself, whereas in his statement in the ambulance, which was testified to on rebuttal, he described an entirely different exculpatory scenario. As the Practice Commentaries observe, section 710.30 is intended to reach statements that the State plans to offer on its case in chief, and does not preclude use of those statements on cross-examination or in rebuttal to testimony offered for the defense. See P. Preiser, Practice Commentaries, N.Y. Crim. Proc. L. § 710.30 (McKinney 2013) (citing People v. Goodson, 57 N.Y.2d 828, 455 N.Y.S.2d 757 (1982); People v. Breedlove, 61 A.D.3d 1120, 1122, 878 N.Y.S.2d 465, 468 (3d Dep't 2009) (citing cases)).

1. Procedural Bar Criteria

If the highest state court to address a federal-law claim disposes of it on a "state law ground that is 'independent of the federal question and adequate to support the judgment,'" a federal habeas court may not review that claim unless the petitioner demonstrates both cause for his default and prejudice or else establishes that a failure to address the claim would constitute a fundamental miscarriage of justice. See, e.g., Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)); see also Jimenez v. Walker, 458 F.3d 130, 136 (2d Cir. 2006) (citing Harris v. Reed, 489 U.S. 255, 260 (1989)). A state procedural rule can qualify as an adequate and independent state-law ground. See Harris, 489 U.S. at 260-61.

To be independent, the state-law holding must rest on state law that is not "'interwoven with the federal law.'" Jimenez, 458 F.3d at 137 (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)). Since it can be "'difficult to determine if the state law discussion is truly an independent basis for decision or merely a passing reference,'... reliance on state law must be 'clear from the face of the opinion.'" Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000) (quoting Coleman, 501 U.S. at 732, 735).

29

When determining whether we may entertain a claim, we "apply a presumption against finding a state procedural bar and 'ask not what we think the state court actually might have intended but whether the state court plainly stated its intention.'" <u>Galarza v. Keane</u>, 252 F.3d 630, 637 (2d Cir. 2001) (quoting <u>Jones v. Stinson</u>, 229 F.3d 112, 118 (2d Cir. 2000)).

In this regard, even if the appellate court rejects the claim as unpreserved and then, in the alternative, notes that if it had reviewed the merits it would have rejected the claim, the ruling is deemed, for this purpose, to have rested on the state-law procedural ground. <u>See</u> <u>Murden v. Artuz</u>, 497 F.3d 178, 191 (2d Cir. 2007) ("Even where the state court has ruled on the merits of a federal claim 'in the alternative,' federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default.") (citation omitted); <u>Green v. Travis</u>, 414 F.3d 288, 294 (2d Cir. 2005); <u>cf.</u>, <u>e.g.</u>, <u>Bell v. Miller</u>, 500 F.3d 149, 155 (2d Cir. 2007) (state court's "contingent observation" is not an "adjudication on the merits" for purposes of habeas review).

As for the requirement of adequacy, the state procedural rule must be "'firmly established and regularly followed by the state in

30

question' in the specific circumstances presented in the instant case." Murden, 497 F.3d at 192 (quoting Monroe, 433 F.3d at 241); see Lee v. Kemna, 534 U.S. 362, 376 (2002); Cotto v. Herbert, 331 F.3d 217, 239 (2d Cir. 2003) (citing Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999)). However, principles of comity caution against categorizing a state procedural rule as inadequate "lightly or without clear support in state law." Garcia, 188 F.3d at 77 (internal quotation marks omitted).

Once respondent has demonstrated that the state court relied on an independent and adequate ground, it is incumbent upon petitioner to meet one of two recognized exceptions. Under procedural-bar rules, we may not review the merits of the claim unless petitioner can overcome his procedural default by either "demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law, or [establishing] ... that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; see also Fama, 235 F.3d at 809.

To demonstrate cause, petitioner must establish that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," for example, by

31

showing that the factual or legal basis for a claim was not reasonably available to counsel or that "some interference by officials... made compliance impracticable." Murray v. Carrier, 477 U.S. 478, 488 (1986) (citing Reed v. Ross, 468 U.S. 1, 16 (1984), and quoting Brown v. Allen, 344 U.S. 443, 486 (1953)). A petitioner may also satisfy the cause requirement by demonstrating that the failure of his attorney to comply with state procedural rules denied him constitutionally adequate representation. See Restrepo v. Kelly, 178 F.3d 634, 640 (2d Cir. 1999). He cannot invoke this ground, however, unless he first asserted an equivalent independent Sixth Amendment claim in state court and exhausted his state-court remedies with respect to that claim. See, e.g., Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). In any event, it bears emphasis that "[a] defense counsel's ineffectiveness in failing to properly preserve a claim for review in state court can suffice to establish cause for a procedural default only when the counsel's ineptitude rises to the level of a violation of a defendant's Sixth Amendment right to counsel." Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001).

The second exception -- that failure to review petitioner's claims would result in a fundamental miscarriage of justice -- is reserved for the "extraordinary case, where a constitutional

violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496; accord Sawyer v. Whitley, 505 U.S. 333, 339 n.6 (1992). To establish "actual innocence," petitioner must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623 (1998)(quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)) (internal quotation marks omitted). In this context, "actual innocence means factual innocence, not mere legal insufficiency." Id. at 623. Furthermore, the petitioner must support his claim "'with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.'" Doe v. Menefee, 391 F.3d 147, 161 (2d Cir. 2004) (quoting Schlup, 513 U.S. at 324); see also Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002).


## 2. Assessment of Procedural Bar


The testimony in question was by Police Officer Paul Brown, of the Crime Scene Unit, who reported on direct examination that he had been delegated to inspect the crime scene in order to collect pertinent physical and forensic evidence and take photographs. (Tr.

564, 572-73). He testified that he had prepared a sketch of the scene in the apartment, collected bloody clothing from the sidewalk, photographed those items, and had also taken photographs of the interior of the building and the apartment, which he identified for the jury. (Tr. 474-88). On cross-examination, defense counsel elicited from him the fact that the police had done no fingerprint or DNA testing or serology analysis. (Tr. 600). In consequence, on redirect the prosecutor asked Officer Brown why he had not taken fingerprints from the scene, and he answered:

> In this case I did not take fingerprints because it was described to me that there was no uncertainty or doubt who the perpetrator or the suspect is in this particular case. And I think he was already placed under arrest. So at that particular point I don't think it was necessary to throw black powder or white conventional powder on that wall. I think it was an unnecessary step.

(Tr. 605). Defense counsel did not object. (See id.).


On appeal Budhoo complained about the prosecutor's eliciting of the cited answer by Officer Brown. In response the State argued that the objection was both unpreserved and meritless. (Reimels Decl. Ex. 2 at 27). The Appellate Division explicitly rejected the claim on the basis of lack of preservation and declined to review the claim in the interest of justice. The panel then went on to say that, if called upon to address the merits, it would find it to be

34

groundless. <u>Budhoo</u>, 46 A.D.3d at 406, 847 N.Y.S.2d at 582.

Given this posture of the case, it is plain that the claim is procedurally barred from habeas review. Under the contemporaneous-objection rule embodied in N.Y. Crim. Proc. L. § 470.05, petitioner's failure to object to Officer Brown's testimony amounts to a lack of preservation, which ordinarily will preclude the state appellate courts from addressing the claim on its merits. Moreover, the Appellate Division explicitly found the claim to be unpreserved and declined to review it in the interest of justice. Such reliance on the contemporaneous-objection rule constitutes an independent state-law ground. <u>See</u>, <u>e.g.</u>, <u>Gutierrez v. Smith</u>, 702 F.3d 103, 111 (2d Cir. 2012); <u>Kozlowski v. Hulihan</u>, 2013 WL 406531, at *2-*3 (2d Cir. Feb. 4, 2013). Moreover, since the New York courts consistently enforce this rule of non-preservation when the defendant has failed to object to evidence received at trial, <u>e.g.</u>, <u>Kozlowski</u>, 2013 WL 406531 at *3 (citing <u>Downs v. Lape</u>, 657 F.3d 97, 102-04 (2d Cir. 2011)), it is also an adequate ground.

Petitioner cannot demonstrate cause and prejudice. Nothing prevented trial counsel from articulating an objection to Officer Brown's testimony if he thought it worth doing so. Moreover, although Budhoo did assert an ineffective-assistance claim on his

35

440.10 motion that was based in part on this failure by his counsel, that Sixth Amendment theory is unavailing and thus cannot serve to show cause.

To prevail on an ineffective-assistance claim, the defendant must demonstrate both that his counsel's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for his counsel's unprofessional errors, the result below would have been different." Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 1482 (2010)(quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)). See also Chaidez v. United States, 133 S.Ct. 1103, 1107 (2013). In making this assessment, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. A defendant "may not claim ineffective assistance of counsel merely because in hindsight he thinks counsel's trial strategy was inadequate." United States v. Sanchez, 790 F.2d 245, 253 (2d Cir. 1986). As for prejudice, the focus is "on the question whether counsel's deficient performance renders the result of the

36

trial unreliable or the proceeding fundamentally unfair." <u>Lockhart</u>
<u>v. Fretwell</u>, 506 U.S. 364, 372 (1993). As noted, the defendant must
show "that there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would
have been different." <u>Strickland</u>, 466 U.S. at 394.

Officer Brown did not testify to a belief that Budhoo was
guilty of any of the charges that he faced. Rather, he was
explaining why he did not take fingerprint impressions at the crime
scene, and his comment was simply that he had not done so based on
his understanding that Budhoo had in fact been the person who had
stabbed Mrs. Budhoo. Since that version of events was in fact
consistent with petitioner's own narration -- indeed, Mr. Budhoo so
testified when he subsequently took the witness stand -- it is not
surprising that defense counsel did not object, and his failure to
do so cannot be deemed constitutionally inadequate representation.
Moreover, given the consistency of the now-challenged police
testimony with the defense's theory of the case, it is evident that
petitioner also cannot demonstrate prejudice from counsel's
silence, thus precluding Buhoo from demonstrating either cause or
prejudice.

Finally, petitioner does not attempt to demonstrate that the

37

refusal of the habeas court to address this claim on the merits would trigger a fundamental miscarriage of justice. He offers no new evidence that he was innocent of any of the charges, and he certainly fails to suggest a basis for inferring that Officer Brown's testimony as to why he did not take fingerprint evidence caused his conviction.

In sum, this claim too must be rejected.[7]

d. Trial Counsel's Performance

Petitioner next invokes the same Sixth Amendment claim that he pressed on his state-court section 440.10 motion. As summarized in his petition, he asserts that trial counsel denied him effective representation because the lawyer "failed to investigate and/or call exculpatory witnesses, failed to elicit exculpatory testimony from the petitioner, and failed to present mitigating evidence at

---

[7] In the alternative, we note that Budhoo's underlying claim of prosecutorial misconduct is entirely baseless. To sustain such a claim the petitioner must show that the prosecutor engaged in improper behavior that "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Dawkins v. Artuz, 152 F. App'x 45, 46-47 (2d Cir. 2005) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). For reasons noted, the prosecutor's question to Officer Brown was entirely proper and, in any event, did not infect the trial with unfairness.

sentencing concerning petitioner's traumatic brain injury. (Pet. at pp. 9-10). Based on the details found in the 440.10 motion, we infer that petitioner is again complaining that the attorney failed to call as a witness Budhoo's brother, who assertedly could have testified that long before the June 1, 2004 incident Mrs. Budhoo had physically and verbally abused her husband; that the lawyer should have called petitioner's son Mahendra to testify about an earlier incident in which Mrs. Budhoo had threatened petitioner with a knife; that the lawyer should have elicited from petitioner an account of an earlier assault by Mrs. Budhoo and Mr. Barabum against Budhoo in which they seized his cell phone and beat him with it; that, in mitigation of sentence, the attorney should have mentioned an incident from many years before in Guyana, in which Budhoo suffered a traumatic brain injury that supposedly led to a change in his behavior; and that the attorney did not conduct an adequate pre-trial investigation and did not sufficiently communicate with his client. (See Reimels Decl. Exs. 12 & 14).[8]


The trial court addressed these claims on the merits and, hence, its decision is subject to limited review under section

---

[8] Although petitioner included in his section 440.10 motion an assertion that his trial lawyer had prevented him from testifying, he does not appear to be reiterating that obviously false contention in this court.

2254(b). Under that standard there is plainly no basis for relief.

The purported utility of calling Mr. Buhoo's brother, Somdat Hardeo -- because he would have testified that Mrs. Budhoo was aggressive and beligerent to petitioner, to the point that he had left his home in February 2004 -- was addressed by petitioner's former trial counsel in his 440.10 declaration. He reported that he had interviewed Mr. Hardeo and had determined that Hardeo was not an appropriate witness because he was prepared to testify falsely for his brother. (Prieston's Feb. 8, 2010 Affirmation in Opp'n to § 440.10 Mot. ("Prieston Affirmation") ¶ 9). Justice Villegas credited the attorney's account, and on that basis rejected Budhoo's complaint. (Reimels Decl. Ex. 15 at pp. 2-3). The judge's factual finding is binding on us absent a compelling basis for rejecting it, and we see none. It is of course improper for an attorney to call a witness who will perjure himself, see Nix v. Whiteside, 475 U.S. 157, 169 (1986) (discussing attorneys' duty of candor to the court); People v. DePallo, 96 N.Y.2d 437, 441, 754 N.E.2d 751, 753 (2001) (citing Nix, 475 U.S. at 168-69), and on that basis the attorney cannot be found to have denied his client professional representation.

We further note an alternative basis for rejecting Budhoo's

40

critique of trial counsel for not calling his brother. In support
of petitioner's 440.10 motion, he supplied an affidavit of Mr.
Hardeo, and from a review of that document we observe that he was
proffering testimony to the effect that petitioner had told him
over the years that his wife was both physically and verbally
abusive. Indeed, his account of the details is prefaced by the
statement that "[f]or years prior to the altercation in which
Rookmin Budhoo was stabbed, my brother Parmanand Budhoo and I had
extensive conversations about the threats and abuse that Rookmin
directed at him." (Reimels Decl. Ex. 12 (Hardeo Aff.) ¶ 3). He then
went on to recount what his brother had told him, making clear
contextually and otherwise that he was not an eyewitness to any of
the incidents between the spouses. (Id. ¶¶ 4-11). Indeed, although
he also reported that petitioner's young son Mahendra (referred to
as Kevin) had witnessed an incident in which his mother had held a
knife, Mr. Hardeo ended by confirming that he was reporting only
his brother's prior statements to him: "Prior to trial, I spoke to
Parmanand's attorney, Mr. Prieston, and told him that I could
corroborate the threats and abuse by Rookmin against Parmanand and
that Kevin [the son] had actually seen one of these incidents
occur." (Id. ¶ 12). By contrast, the only incidents that Mr. Hardeo
reported having actually witnessed were (1) Mr. Budhoo coming to
live with him after an order of protection had been issued against

41

petitioner,[9] and (2) an accident in Guyana when his brother was 19 years old, in which a tractor "toppled on him," supposedly causing brain injuries. (Id. ¶¶ 13-16).

In sum, the proffered testimony by Mr. Hardeo as to Mrs. Budhooo's violent proclivities would have been hearsay, and hence inadmissible under New York law. Accordingly, counsel had still another basis for choosing not to call petitioner's brother as a witness, and petitioner plainly cannot demonstrate resultant prejudice.

As for petitioner's complaint that the lawyer should have called his young son Mahendra, this was plainly a tactical decision by the attorney (see Prieston Affirmation ¶¶ 7, 8), and as such cannot amount to ineffective assistance. United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987). In this respect it bears emphasis not only that the child was apparently only ten years old at the time of the trial (see Tr. 428), but that he had

---

[9] Mr. Hardeo suggested in his affidavit that petitioner had come to live with him in February 2004 because he was afraid of his own wife (Reimels Decl. Ex. 12 (Hardeo Aff.) ¶ 8), but this is plainly a falsehood, since petitioner confirmed at trial that he had gone to live with his brother because an order of protection had been entered against him. (Tr. 783; see also id. at 801-02).

not witnessed the incidents that led to the charges that faced his father. (See Prieston Affirmation ¶ 7). Moreover, he had apparently been a witness to several incidents of threatened violence by his father and hence his testimony was likely to be quite damaging to the defense. Furthermore, there was an abundance of evidence at trial of Budhoo's own assaultive behavior, which had led to the issuance of several orders of protection. Given that evidence and the eyewitness testimony of the two Budhoo daughters and their mother as to the actual events that formed the basis for the criminal charges, as well as the medical and other evidence as to the nearly fatal extent of the injuries that Budhoo had inflicted on his wife, there is no reason to believe that calling the young son as a defense witness would have altered the result of the trial.

As noted, petitioner also complains about the attorney's failure to ask him about an earlier assault on him by his wife and Mr. Barabum, but a careful reading of the proffered 440.10 affidavit of Mr. Hardeo indicates that the alleged physical assault was carried out only by Mr. Barabum. (Reimels Decl. Ex. 12 (Hardeo Aff.) ¶ 10). Evidence of an encounter in which Mrs. Budhoo's friend was the physical aggressor would have lacked significant probative value as to whether Mr. Budhoo acted with the requisite homicidal

43

intent on June 1. Moreover, the notion that Mrs. Budhoo was aggressive or confrontational with her husband prior to the events at issue is unlikely to have affected the result of the trial in view of the overwhelming evidence of petitioner's own aggression, including at the time of the ultimate assault, and the extent of his wife's injuries.

Finally, we note that in the course of direct examination defense counsel asked his client whether he was having problems in the marriage in late 2003 and early 2004, to which Budhoo responded that his wife was having an affair with Mr. Barabum. (Tr. 783). He then went on to say that this was "the only problem [m]e and my wife had since I came in the United States." (Id.). This testimony was plainly inconsistent with petitioner's post-trial claims that his wife was so assaultive as to have chased him out of the apartment, and further undercuts his claim that he was convicted because his attorney failed to ask him about an incident in which Mr. Barabum grabbed his cell phone and hit him with it.[10]

_____

[10] The defense faced a potential quandary in considering how harshly to portray Mrs. Budhoo. If it had proffered testimony of her evil character and assaultive tendencies, that might have offered some support of Budhoo's claim that he acted in self-defense on June 1, but the same evidence might also have suggested to the jurors that on that occasion he was acting out of fury at his wife for her perceived transgressions, notably her alleged affair, and hence suggested to the jury -- particularly

In short, this version of Budhoo's criticism of his attorney also fails. The attorney was plainly making a tactical decision about what to ask his client, and petitioner does not show that counsel's failure to pose a question about Mr. Barabum's alleged assault likely affected the outcome of the trial.

Petitioner next asserts that his Sixth Amendment rights were violated because his attorney did not mention the tractor incident at the time of sentencing. The short answer is that his trial attorney reported in his declaration that no one had told him about the incident (Prieston Affirmation ¶ 10), and the judge credited that testimony. (Reimels Decl. Ex. 15 at 3).[11] As the judge concluded, counsel cannot be charged with inadequate performance for not reciting a fact of which he was not aware and which he had no reason to investigate in the absence of any such information. In any event, the judge went on to state that, even if the incident had been mentioned, it would not have altered his sentencing decision, which -- as he noted -- was below the statutory maximum. (Id. Ex. 15 at 3). Hence, counsel's asserted omission did not prejudice petitioner.

_____

in conjunction with the medical evidence -- that Budhoo was indeed guilty of a homicidal assault.

[11] We have no reason to question that credibility finding.

45

Petitioner's last direct attack on his trial attorney is the accusation that he did not conduct an adequate investigation or consult with him. Petitioner never proffered to the state court any details as to what information counsel should have uncovered and what investigative steps he should have taken, but did not. As for consultation with petitioner, Budhoo fails to indicate what information he was unable to communicate to his attorney, and the trial judge found that, at least in his field of vision in court during the trial, the attorney was consulting with his client. Moreover, the attorney reported in his responding declaration that he had in fact interviewed the potential witnesses -- an assertion corroborated in part by Mr. Hodeo (id. Ex. 12 -- Hodeo Aff. ¶ 12) (noting his conversation with defense counsel). In short, petitioner relies on purely conclusory allegations, which do not suffice to show inadequate performance by counsel or consequent prejudice to him.

### e. Ineffective Appellate Counsel

Petitioner's last thrust is to assert that he was denied effective assistance of appellate counsel. This claim is premised on the contention that his appellate lawyer should have asserted a Sixth Amendment claim of ineffective trial counsel. In his petition

46

he specifies that, on his state-court appeal, counsel should have argued that the trial attorney had been inadequate because he had not objected, under section 710.30, to the rebuttal testimony concerning Budhoo's exculpatory statement in the ambulance or to the reference by Officer Brown to his belief that there was no identification issue necessitating fingerprint evidence. (Pet. 11). In petitioner's reply papers he adds still another theory, arguing -- as he had on coram nobis -- that the appellate attorney should have accused the trial lawyer of inadequacy because he did not move to suppress petitioner's exculpatory ambulance statements as involuntary. (Pet'r's Reply Mem. at 22-26).

The standards by which to judge the performance of appellate counsel parallel those applicable to the criteria for assessing trial attorneys' adequacy. See, e.g., Edwards, 529 U.S. at 450; Clark v. Stinson, 214 F.3d 315, 321 (2d Cir. 2000). The Supreme Court has also emphasized the broad discretion left to appellate attorneys to "winnow[] out weaker arguments on appeal and focus[] on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-52 (1983); see Harris v. Phillips, 2013 WL 1290790, at *12 (E.D.N.Y. Mar. 28, 2013); Wright v. Poole, 2012 WL 4478393, at *3 (S.D.N.Y. Sept. 28, 2012). Judged by these standards, petitioner's argument fails to meet the mark.

47

First, as noted, Officer Brown's now-challenged testimony simply explained why he had not obtained fingerprint impressions -- he had understood that there was no identification question as to the stabber -- and for that purpose the prosecutor's eliciting of his testimony was certainly a permissible follow-up to the defense cross-examination. Second, although defense counsel might have sought a limiting instruction from the judge on this point, it would have served little purpose, since, as noted, there was no dispute between the two sides that Budhoo had indeed been responsible for stabbing his wife, although he raised issues of intent and self-defense. In short, trial counsel did not deny petitioner effective assistance or prejudice his case by not objecting to Officer Brown's statement about the reason for the absence of fingerprint evidence. Necessarily, then, there was no reason for appellate counsel to make such an argument.

As for the trial attorney's failure to object to the rebuttal testimony of the officer and EMS technician about an inculpatory statement made by Budhoo, for reasons already noted, there would have been no basis for him to object on the ground that the prosecutor had not given statutory notice, since, as we have observed, that provision does not cover rebuttal evidence offered

48

to impeach the defendant's testimony.[12] In any event, the statement
in question was exculpatory in nature -- petitioner was blaming his
daughter's boyfriend for the stabbings -- and its exclusion would
not have meaningfully affected the course of the trial, since there
was no question that Budhoo had stabbed his wife repeatedly and
nearly fatally and there was overwhelming evidence that this
assault had occurred after a series of incidents in which
petitioner had engaged in increasingly theatening behavior towards
his wife.

Finally, petitioner's Sixth Amendment argument also fails
insofar as he contends that his appellate attorney should have
invoked the trial lawyer's failure to move to suppress the
exculpatory statement as involuntary.[13] Petitioner offers no

---

[12] It also appears that the statement may have been exempt
because it was made in the presence of an EMS technician, who was
not a "public servant" within the meaning of the statute. See
Jelinek v. Costello, 247 F. Supp. 2d 212, 276 (E.D.N.Y. 2003)
(noting that "[a]lthough the term 'public servant' is not defined
in New York's criminal procedure law" the Appellate Division has
declined to interpret the term to extend to a state employee who
"was not acting as an agent of the police in obtaining either the
arrest or confession of the defendant."); People v. Wilhelm, 34
A.D.3d 40, 45, 822 N.Y.S.2d 786, 790 (3d Dep't 2006).

[13] We note that this argument was not made in Budhoo's
petition, and was first mentioned to this court only in his reply
papers. This alone could justify rejecting the claim. See Keefe
ex rel. Keefe v. Shalala, 71 F.3d 1060, 1066 n.2 (2d Cir. 1995);
Concepcion v. United States, 181 F. Supp. 2d 206, 231 (E.D.N.Y.

evidence to demonstrate that the statement was not voluntary. Indeed, the testimony of the two witnesses to the statement made clear that Budhoo had spontaneously volunteered the statement during the ambulance ride and that he had not been subject to any interrogation during that period. Moreover, although petitioner suggests that the voluntariness of the statement should be discounted because he was suffering from injuries at the time, that argument is baseless. The premise for his theory is the Supreme Court's decision in Mincey v. Arizona, 437 U.S. 385 (1978), in which the defendant was interrogated while in the intensive care unit of a hospital, asked the police to stop the questioning, was only partially conscious and made a number of inculpatory statements. Id. at 396, 398-99. In striking contrast, there is no evidence that petitioner was being questioned rather than simply volunteering the statement, there is no evidence that he was only partly conscious, and, most strikingly, the statement was exculpatory, as petitioner sought to shift the blame for the attack to another person, which is strong evidence that the statement was calculated.

Given these circumstances, petitioner fails to demonstrate

---

2002).

that there was a compelling basis for his trial lawyer to move to
suppress the statement, and hence counsel's omission of that step
does not reflect incompetent performance. Moreover, for reasons
already noted, petitioner cannot show prejudice since the statement
was exculpatory and went to an issue that was not in dispute at the
trial -- petitioner's factual responsibility for stabbing his
wife.[14] Necessarily, then, a Sixth Amendment appellate argument
premised on this point would have been futile.

        In sum, petitioner's claim that his appellate attorney denied
him effective representation falls of its own weight.

                            CONCLUSION

        For the reasons stated, we recommend that the writ be denied
and the petition dismissed. We further recommend that a certificate
of appealability be denied as petitioner does not raise any issues
worthy of appellate review.

_____

        [14] The only potential pertinence of the statement was to
undercut petitioner's credibility as a witness concerning his
intent in stabbing Mrs. Budhoo, but the ample evidence of his
history of threats and acts of violence as well as the eyewitness
testimony of his own family members regarding the events of June
1 surely would have sufficed to lead the jury to the result that
it ultimately reached.

                               51

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Alison J. Nathan, Room 2102, United States Courthouse, 40 Foley Square, New York, New York 10007-1312 and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007-1312. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 150 (1985), reh'g denied, 474 U.S. 1111 (1986); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


DATED: New York, New York
       July 8, 2013


                              RESPECTFULLY SUBMITTED,


                              _____
                              MICHAEL H. DOLINGER
                              UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Report and Recommendation have been
mailed today to:

Jonathan I. Edelstein, Esq.
271 Madison Avenue
20th Floor
New York, New York 10016

Brittany Moss, Esq.
Peter J. Coddington, Esq.
Assistant District Attorneys
 for Bronx County
198 East 161st Street
Bronx, New York 10451